UNITED STATES of America,
Plaintiff-Appellee,

v.

The **BOARD OF SCHOOL COMMISSION-
ERS OF** the **CITY OF INDIANAPO-
LIS, INDIANA,** et al., Defendants-Ap-
pellees,

Citizens of Indianapolis for Quality
Schools, Inc., et al., Petitioners for
Intervention-Appellants.

No. 71–1461.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1972.

Decided Aug. 14, 1972.

See also, D.C., 332 F.Supp. 655.

Harold E. Hutson, Indianapolis, Ind., for appellants.

Stanley B. Miller, U. S. Atty., Indianapolis, Ind., and David L. Norman, Brian K. Landsberg and John D. Leshy, Attys., Dept. of Justice, Washington, D. C., for the United States.

G. R. Redding, E. C. Ulen, Jr., and Stephen W. Terry, Jr., Indianapolis, Ind., for Board of School Commissioners of City of Indianapolis, Ind., and others.

Before SWYGERT, Chief Judge, MURRAH, * Senior Circuit Judge, and JUERGENS, ** District Judge.

MURRAH, Senior Circuit Judge.

This is an appeal from an order of the District Court denying appellants' petition for intervention in a school desegregation case as a matter of right or permission under Rule 24(a) and (b) of the Federal Rules of Civil Procedure, 28 U.S.C. The United States initiated this action in 1968, pursuant to Title IV of the 1964 Civil Rights Act (42 U.S.C. § 2000c–6(a) and (b)), charging the Board of School Commissioners for the City of Indianapolis with racial discrimination in the assignment of faculty and students. The portion of the case relating to faculty assignments was tried separately—apparently under Fed.R.Civ. P. 42(b), 28 U.S.C. Pursuant to facts admittedly reflected by the school board's statistical records, the parties stipulated that the school board had considered certain racial factors in the assignment of teachers. On the basis of this stipulation the trial court entered a consent decree finding unlawful discrimination in faculty assignments and ordered remedial injunctive relief. See the related case of Burns v. Board of School Commissioners, 302 F.Supp. 309 (S.D.Ind.1969), aff'd, 437 F.2d 1143 (7th Cir. 1971). This matter is not before us.

Our concern is with the student portion of the case. While this portion of the case was pending, Citizens of Indianapolis for Quality Schools (CIQS), a corporation, moved to intervene as a party defendant on behalf of all students in the Indianapolis Public Schools who were children of its 5,000 members and on behalf of all other students in the school system. Shortly thereafter, twenty-two students seeking intervention on their own behalf and on behalf of all other students moved to be named as additional parties to the petition previously filed by CIQS. The trial court denied the motion to intervene, finding that "although the applicants . . . had a practical interest in the resolution of the litigation, they had no legal interest over and above that of the defendant Board of School Commissioners and, further, that there was no showing that this interest was not being adequately represented by the defendants." The trial court authorized the applicants to participate amici curiae.

After trial on the student portion of the case, the District Court found that

* Senior Circuit Judge Alfred P. Murrah of the Tenth Circuit is sitting by designation.

** Chief District Judge William G. Juergens of the Eastern District of Illinois is sitting by designation.

the Indianapolis school system had been unconstitutionally segregated. The school board has appealed from this determination. At this point in the litigation the trial court broadened the scope of the lawsuit to include consideration of whether consolidation of the Indianapolis schools with surrounding school systems is necessary for the effectuation of a unitary school system. Apparently in consequence of this enlargement, two black students were allowed to intervene as parties plaintiff on behalf of all black students in the Indianapolis schools. These intervenors filed a complaint seeking to add several additional parties as defendants and alleging that the maintenance of separate school systems in the Indianapolis metropolitan area had resulted in a denial of their constitutional rights. Thereafter, the City of Indianapolis, the Indianapolis Housing Authority, and twelve school systems in the area surrounding Indianapolis were made additional defendants and further proceedings are now pending in the trial court.

Before intervention as a matter of right will be granted under Rule 24(a)(2), the applicant must show: (1) an interest relating to the property or transaction which is the subject of the lawsuit; (2) that disposition of the lawsuit may impair his ability to protect that interest; and, (3) that his interest is not adequately represented by the existing parties. It may be conceded for purposes of this appeal that "[a]ll students and parents, whatever their race, have an interest in a sound educational system and in the operation of that system in accordance with the law." Moore v. Tangipahoa Parish School Board, 298 F.Supp. 288, 293 (E.D.La.1969). See also Hatton v. County Board of Education of Maury Co., Tenn., 422 F.2d 457, 461 (6th Cir. 1970); Smuck v. Hobson, 132 U.S.App.D.C. 372, 408 F.2d 175, 178, 180 (1969). It may also be conceded that this asserted interest might, as a practical matter, be impaired by the disposition of this litigation.

We must, however, agree with the trial court's conclusion that this conceded interest was adequately represented by the school board in those portions of the case which have thus far been adjudicated. ". . . [R]epresentation is adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor and if the representative does not fail in the fulfillment of his duty." Martin v. Kalvar Corp., 411 F.2d 552, 553 (5th Cir. 1969). See also Stadin v. Union Electric Co., 309 F.2d 912, 919 (8th Cir. 1962), cert. denied, 373 U.S. 915, 83 S. Ct. 1298, 10 L.Ed.2d 415; Moore v. Tangipahoa Parish School Board, supra, 298 F.Supp. at 291; Peterson v. United States, 41 F.R.D. 131, 133 (D.C.Minn. 1966).

There have been no allegations that the school board's interests are adverse to the appellants or that it has, at any time, acted in bad faith. Rather, as we read it, the claim is that by entering into stipulations and a consent decree in the faculty portion of this case the school board failed to assert appellants' interests as vigorously and effectively as appellants would have had they been parties to the litigation; moreover, this attitude on the part of the school board is said to indicate the possibility of continued inadequate representation. The ready and conclusive answer is that: (1) the judgment of the court in the faculty portion of the case was based on stipulated, relevant, statistical facts as to which there can be no dispute—indeed, appellants neither deny nor attack these facts in any way; and (2) the consent decree was the inescapable legal consequence of application of fundamental law to these facts. That appellants would have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that the school board did not adequately represent their interests in the litigation. See Bumgarner v. Ute Indian Tribe of Uintah and Ouray Res.,

417 F.2d 1305, 1308 (10th Cir. 1969); Stadin v. Union Electric Co., *supra.* As to the student portion of the case in which appellants now seek to intervene, it is sufficient to say that the school board has defended every step of the proceeding to the point of judgment and, furthermore, has perfected an appeal from the trial court's finding that the Indianapolis school system is unconstitutionally segregated. At this juncture of the litigation we cannot say that the trial court erroneously denied intervention under Rule 24(a).

■■■ But, inasmuch as the appellants' asserted interests involve legal and factual issues in common with the main action, the trial court may, in its discretion permit intervention under Rule 24(b), if to do so would not unduly delay or prejudice adjudication of the rights of the original parties. The discretion committed to the trial judge in this area is, to be sure, wide, and we should be careful not to pre-empt it. It remains, nevertheless, a judicial discretion subject to review for abuse. See Brotherhood of R. R. Trainmen v. Baltimore & O. R. R., 331 U.S. 519, 524–525, 67 S.Ct. 1387, 91 L.Ed. 1646 (1946); Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694, 704 (1967); Moore v. Tangipahoa Parish School Board, *supra,* 298 F.Supp. at 292–293. After considering the facts and circumstances before the trial judge at the time the motion for intervention was entertained, we cannot say that the trial judge's decision amounted to an abuse of discretion.

However, changes in the scope of the litigation which occurred after the denial of intervention are relevant to a determination of whether permissive intervention should now be granted. The trial judge's decision to consider the desirability of consolidating the Indianapolis schools with surrounding school systems is an important change. Permitting intervention in support of appellants' asserted interests may prove helpful to the trial judge's consideration of all aspects of this societally affected legal problem. It is also significant, we think, that two black students have been permitted to intervene as parties plaintiff in order to represent the particular interests of all black students in the Indianapolis schools.

■ In these circumstances, although we have found no abuse of discretion in the trial judge's initial determination, we vacate the denial of intervention and remand the matter for reconsideration in the light of the later developments. Such intervention, of course, would be conditioned upon appellants' adoption of all previous adjudications and upon a determination that they are proper representatives of the class on whose behalf intervention is sought. See Moore v. Tangipahoa Parish School Board, *supra* at 293–294; Shapiro, "Some Thoughts on Intervention Before Courts, Agencies and Arbitrators," 81 Harv.L.Rev. 721, 752–756 (1968).

■■ The government contends that CIQS, as a corporation, is not a member of the class which it seeks to represent. Whether CIQS is a proper class representative is a question which should be determined by the trial court in the first instance. It is noteworthy, however, that for purposes of standing " . . . an organization whose members are injured may represent those members in a proceeding for judicial review." Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).[1] This is especially true when representation of the interests in-

---

1. See, *e. g.,* NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); NAACP v. Alabama, 357 U.S. 449, 458–460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Arkansas Education Ass'n v. Board of Education of Portland, Ark. Sch. Dist., 446 F.2d 763, 766 (8th Cir. 1971); National Automatic Laundry and Cleaning Council v. Shultz, 443 F.2d 689, 693–694 (1971); West Virginia Highlands Conserv. v. Island Creek Coal Co., 441 F.2d 232, 234–235 (4th Cir. 1971); Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391,

volved is the primary reason for the organization's existence. See Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 937 (2d Cir. 1968). The requirements for intervention, moreover, should generally be more liberal than those for standing to bring suit. Shapiro, *supra* at 726, et seq.

In the event CIQS is ultimately deemed to be truly representative of the students who are children of its members, the trial court should determine whether the class should also embrace the twenty-two students specifically named in the petition and all other students similarly situated. The case is remanded for further proceedings in accordance with these views.

428 F.2d 1093, 1097 (1970) ; Citizens Association of Georgetown v. Simonson, 131 U.S.App.D.C. 152, 403 F.2d 175, 176 (1968) ; Smith v. Board of Education of Morrilton Sch. Dist. No. 32, 365 F.2d 770, 777 (8th Cir. 1966) ; Sisters of Prov. of St. Mary of Woods v. City of Evanston, 335 F.Supp. 396, 401 (N.D.Ill. 1971) ; Wisconsin Student Ass'n v. Re-

gents of Univ. of Wis., 318 F.Supp. 591, 593 (W.D.Wis.1970). And cf. Organized Mig. in Community Action v. James Archer Smith Hosp., 325 F.Supp. 268, 270 (S.D.Fla.1971) ; National Welfare Rights Organization v. Wyman, 304 F.Supp. 1346, 1348 (E.D.N.Y.1969) ; Wis. State Emp. Ass'n v. Wis. Nat. Resources Bd., 298 F.Supp. 339 (W.D.Wis.1969).