UNITED STATES of America, Plaintiff,

v.

The AMERICAN INSTITUTE OF REAL ESTATE APPRAISERS OF the NATIONAL ASSOCIATION OF REALTORS, the Society of Real Estate Appraisers, the United States League of Savings Associations, and the Mortgage Bankers Association of America, Defendants.

No. 76 C 1448.

United States District Court,
N. D. Illinois, E. D.

Nov. 23, 1977.

---

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for plaintiff.

Thomas F. Tobin, Michael K. Murtaugh, Baker & McKenzie, Chicago, Ill., for intervening petitioners.

Paul L. Periot, Washington, D. C., and Frank M. Covey, Jr., Harold Bressler, McDermott, Will & Emery, Charles R. McKirdy, Thomas J. Regan, Pope, Ballard, Shepard & Fowle, Lord, Bissel & Brook, John H. Hanson, Jr., Raymond Jensen, Burditt & Calkins, Chicago, Ill., for defendants.

## MEMORANDUM

LEIGHTON, District Judge.

This cause is before the court on the motion of F. Gregory Opelka and 71 other individuals for leave to intervene and oppose a proposed settlement agreement between plaintiff United States and defendant American Institute of Real Estate Appraisers (hereinafter "AIREA" or "Institute"). Also, the settling parties have applied for entry of the proposed settlement order, approval of the settlement agreement and a confidentiality order between the United States and AIREA. For the following reasons, the motion to intervene as of right under Rule 24(a)(2), Fed.R. Civ.P., is denied; but the court grants Opelka leave to intervene permissively under Rule 24(b), Fed.R.Civ.P., solely for the purpose of contesting the legality of the settlement agreement insofar as it may infringe his constitutional right to freedom of speech. Further, the settlement order, the agreement, and the confidentiality order between the United States and AIREA are approved; their immediate entry is ordered.

I.

On April 16, 1976, the United States filed this suit against four organizations: The American Institute of Real Estate Appraisers, the Society of Real Estate Appraisers, the United States League of Savings Associations, and the Mortgage Bankers Association of America, pursuant to 42 U.S.C. § 3613, to secure relief from alleged violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601, et seq. (hereinafter the "Fair Housing Act"). The complaint alleges that since the effective date of the Fair Housing Act, defendants have engaged in unlawful discriminatory practices by promulgating standards which have caused appraisers and lenders to treat race and national origin as negative factors in determining the value of dwellings and in evaluating the soundness of home loans; and by failing to take adequate steps to correct the continuing effect of past discrimination and ensure non-discrimination by appraisers and lenders whose practices are subject to the influence or authority of the four organizations. Defendants' practices, it is alleged, have made dwellings unavailable to persons because of race and national origin; denied home loans to such persons; and have interfered with their exercise and enjoyment of rights secured by the Fair Housing Act in violation of 42 U.S.C. §§ 3604(a), 3605, and 3617. The United States seeks injunctive and declaratory relief from these alleged violations. Jurisdiction is invoked under 42 U.S.C. § 3613 and 28 U.S.C. § 1345.

After extensive negotiations, which included development of an affirmative action program,[1] the United States and AIREA have agreed not to seek a litigated resolution of their controversy. Instead, they have applied for entry of a settlement order which incorporates a proposed settlement agreement and affirmative action program. The agreement is divided into two parts: (1) the affirmative action program (Pts. I–VI); and (2) a plan for imple-

---

1. The affirmative action program is, to a large extent, the product of negotiations between AIREA and the United States Department of Housing and Urban Development's Office of

Fair Housing and Equal Opportunity, Office of Voluntary Compliance (hereinafter "OFHEO/OVC").

mentation of the agreement and resolution of the litigation (Pts. VII–VIII).

In the affirmative action section, it is agreed that AIREA will adopt three fundamental policy statements:

(1) It is improper to base a conclusion or opinion of value upon the premise that the racial, ethnic, or religious homogeneity of the inhabitants of an area or or a property is necessary for maximum value.

(2) Racial, religious or ethnic factors are deemed unreliable predictors of value trends or price variance.

(3) It is improper to base a conclusion or opinion of value, or a conclusion with respect to neighborhood trends, upon stereotyped or biased presumptions relating to race, color, religion, sex or national origin or upon unsupported presumptions relating to the effective age or remaining life of the property being appraised or the life expectancy of the neighborhood in which it is located.

AIREA is to implement these stated general policies through specific changes in its textbook, *The Appraisal of Real Estate*, through review and, if necessary, prompt revision of its other instructional materials, courses, and seminars to ensure that they reflect the policy statements. Further, AIREA is to prepare, for use in its courses, an educational memorandum which explains civil rights legislation pertinent to the real estate appraisal profession. It is to develop special seminars for its members and the general public concerning appraisal of real estate and explaining the general policies and educational memorandum. AIREA agrees to add new explanatory comments to Canon 4 of Regulation 10 of its Code of Professional Ethics and Standards of Professional Conduct. The comment is to clarify its position with respect to appraisal practices and its commitment to the stated general policies. In addition, it will add to the explanatory comments to Canon 5 a new reporting rule which provides, in part:

All written appraisal reports relating to residential real estate which state that a neighborhood is undergoing decline or is about to undergo decline must contain the specific facts or reasoning upon which the . . . conclusion . . . is based.

A similar provision is made requiring that the specific facts or reasoning upon which similar oral appraisal reports are based must be contained in the appraiser's files. AIREA will issue a new interpretation of Canon 6 which states that it is not improper for an appraiser to permit a government agency investigating alleged unlawful activity to have access to appraisal reports. The decision to permit or deny such access is reserved to the appraiser. AIREA agrees to maintain a procedure for review of the appraisal reports relating to residential real estate in order to ensure that members and candidates understand the general policies. It will also expand its recruitment and scholarship outreach program which is aimed at acquainting women and minority group members with opportunities in the real estate appraisal profession.

The implementation section of the settlement agreement provides a termination date at which time the parties will petition the court for dismissal of AIREA from the litigation. AIREA is to advise the OFHEO/OVC and the United States of each material step taken to implement the agreement. However, it is provided that no part of the agreement

shall be interpreted to limit AIREA's right to implement its plans or publish or distribute any materials which it has developed [pursuant to the affirmative action plan] without prior approval of Justice.

The United States will, however, be placed on AIREA's mailing list and, subject to the confidentiality order, will have access to AIREA's files which relate to the settlement obligation. AIREA may, at its sole option and discretion, obtain review and comments of the United States regarding any material it plans to distribute pursuant to the agreement.

The parties shall remain subject to the continuing jurisdiction of the court during the term of the agreement. The agreement is enforceable by court order, should the

parties disagree as to its interpretation following negotiations attempting to resolve the dispute. The settlement order specifically provides that it and the agreement

[d]o not in any way affect any of the defendants to this action other than AIREA and shall not be deemed to limit or prejudice the rights of the United States or any of said other defendants to apply for any relief they deem appropriate whether or not such relief is different than or in addition to the remedies provided for herein.

Similarly, the agreement provides:

Except as expressly provided for herein and in the Settlement Order, this Settlement Agreement does not constitute a determination of the rights of any party to this litigation.

F. Gregory Opelka, an AIREA member, filed suit in the Circuit Court of Cook County, Illinois, against AIREA challenging its power to enter into the settlement agreement. On March 29, 1977, the circuit court issued an order restraining AIREA from executing the documents intended by the United States and AIREA to resolve the controversy between them. On March 31, 1977, this court entered a temporary order restraining Opelka from attacking the settlement agreement in any state or other federal court. The temporary restraining order was converted into a preliminary injunction on April 8, 1977. Shortly thereafter, Opelka moved for leave to intervene as a party defendant in this action.

Opelka argues that his interest as a member of AIREA is inadequately represented in this action because he and other AIREA members have not been given an opportunity to exercise their right to review and vote on the proposed settlement agreement. The complaint he seeks to file addresses itself solely to the propriety of the settlement. It alleges that the agreement has the effect of binding all AIREA members

to its provisions in the practice of their profession and would violate their first amendment rights; that the governing council exceeded its authority under AIREA by-laws by entering into the agreement; that the agreement constitutes an amendment of the existing code of professional ethics; and that it constitutes a violation of the by-laws in that the agreement amounts to an amendment of the by-laws without proper notice to members. Therefore, Opelka seeks an order compelling AIREA to submit the settlement agreement to its members for their review and restraining AIREA from entering into it, prior to membership approval.

The United States and AIREA assert that Opelka cannot intervene as of right, but have no objection to his intervention, on a permissive basis, for the purpose of contesting the settlement agreement.[2] Opelka and the Society of Real Estate Appraisers (hereinafter "SREA" or "Society") oppose entry of the settlement order and agreement.

## II.

SREA's first, and fundamental, objection is that the court lacks jurisdiction to enter the settlement order because the Fair Housing Act does not apply to appraisers. While the court rejected that contention when it denied SREA's motion to dismiss, the court takes this opportunity to hold that the Fair Housing Act does apply to appraisers of real estate and that this court has jurisdiction over this action under 42 U.S.C. § 3613 and 28 U.S.C. § 1345. And having jurisdiction, it can grant declaratory judgment relief pursuant to 28 U.S.C. §§ 2201, 2202. SREA's principal argument is that because sections 804(a) and 817 of the Fair Housing Act, 42 U.S.C. §§ 3604(a), 3617, do not mention appraisers or the appraisal process, the Act does not reach the activities of appraisers. In pertinent part, these provisions declare:

2. Both the United States and AIREA devote some attention in their briefs to opposing Opelka's intervention as a full party defendant. However, because Opelka's motion and proposed pleading indicate that he wishes to intervene only for the purpose of opposing the settlement agreement, the court finds intervention as a full party defendant is not proposed nor at issue here. See Rule 24(c), Fed.R.Civ.P.

§ 3604.   Discrimination in sale or rental of housing

[I]t shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable or deny*, a dwelling to any person because of race, color, religion, sex, or national origin.

§ 3617.   Interference, coercion, or intimidation; enforcement by civil action

It shall be unlawful to coerce, intimidate, threaten, *or interfere with* any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title. This section may be enforced by appropriate civil action. (Emphasis added.)

It is clear from the plain language of the provisions that appraisers are not exempted from their coverage; both sections are unrestricted with respect to the class of persons subject to their prohibition. The "otherwise make unavailable or deny" language of section 804(a) has been applied to a variety of conduct to prohibit all practices which have the effect of denying dwellings on prohibited grounds. For example, section 804(a) applies to racially exclusionary land use practices by a municipality. *United States v. City of Black Jack, Missouri*, 508 F.2d 1179 (8th Cir. 1974), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975). It applies to "redlining" by financial institutions. *Laufman v. Oakley Bldg. & Loan Co.*, 408 F.Supp. 489, 493 (S.D.Ohio 1976). It applies to delaying tactics and discouragement of rental applications used by resident managers and rental agents, and top management and owners who fail to set objective and reviewable procedures

for rental applications. *United States v. Youritan Construction Co.*, 370 F.Supp. 643, 648 (N.D.Cal.1973), *aff'd as modified*, 509 F.2d 623 (9th Cir. 1975). Finally, it applies to racial "steering". *Zuch v. Hussey*, 366 F.Supp. 553, 556–57 (E.D.Mich.1973).

The "or interferes with" language of section 817 has been similarly broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the Act. *See, e. g., Smith v. Stechel*, 510 F.2d 1162 (9th Cir. 1975); *United States v. City of Black Jack, Missouri, supra; Laufman v. Oakley Bldg. & Loan Co., supra* at 497–98. The Act requires a liberal construction if the statute is to prohibit effectively "all forms of discrimination, sophisticated as well as simple-minded. . . ." *Williams v. Matthews Co.*, 499 F.2d 819, 826 (8th Cir.), *cert. denied*, 419 U.S. 1027, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974). Given a broad interpretation of these provisions, it becomes clear that the United States has stated a claim for relief under their terms. The promulgation of standards which cause appraisers and lenders to treat race and national origin as a negative factor in determining the value of dwellings and in evaluating the soundness of home loans may effectively "make unavailable or deny" a "dwelling" and may "interfere" with persons in the exercise and enjoyment of rights guaranteed by the Act. When such denial or interference occurs as a result of considerations relating to race or national origin, sections 804(a) and 817 are transgressed.[3]

### III.

Absent a statutory right of intervention, Rule 24(a)(2) of the Federal Rules of Civil Procedure requires the applicant to establish three elements as a prerequisite to intervention as of right: (1) an interest in the subject matter of the lawsuit; (2) the po-

---

**3.** The court further notes that it has jurisdiction to enter the settlement order and agreement under the teaching of *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 90 L.Ed. 939 (1946). As was stated in *Grabinger v. Conlisk*, 320 F.Supp. 1213, 1217 (N.D.Ill.1970), *aff'd*, 455 F.2d 490 (7th Cir. 1972):

When a claim is alleged to arise under the Constitution or laws of the United States, the federal district court must entertain the suit except when the alleged claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where it is wholly insubstantial and frivolous.

tential for impairment of that interest; and (3) the inadequate representation of that interest by existing parties. *See* 3B Moore's Federal Practice, ¶ 24.09–1[1] (2d ed. 1977); 7A Wright & Miller, Federal Practice & Procedure, Civil §§ 1902, 1908 (1972); *Comment, Intervention in Government Enforcement Actions*, 89 Harv.L.Rev. 1174 (1976). Opelka argues that he has an interest in the entry of the settlement agreement and order which may be impaired by this court's disposition of the matter in that his right to commercial free speech and the economic conditions of his practice may thereby be affected. The gist of his argument is that the settlement agreement and order, if approved by this court, will bar him from utilizing racial and ethnic factors in making appraisals of residential real estate and thereby force him to ignore socioeconomic realities. He also argues that because the agreement binds all individual AIREA members, those who are jointly designated members of both AIREA and SREA will be placed in the untenable position of either adhering to SREA practices or complying with the settlement order. These arguments misapprehend the "interest" and "practical impairment" requirements of Rule 24(a)(2) as well as the substance and reach of the proposed settlement before the court.

■ The "interest" requirement of Rule 24(a)(2) has been recognized as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 128 U.S. App.D.C. 172, 178, 385 F.2d 694, 700 (1967). The requirement is satisfied by something less than a specific legal or equitable interest in the chose. *See, e. g., Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 132–36, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967); *Johnson v. San Francisco Unified School Dist.*, 500 F.2d 349, 352–53 (9th Cir. 1974); *Smuck v. Hobson*, 132 U.S.App. D.C. 372, 408 F.2d 175 (1969); *Nuesse v. Camp, supra.* As one court has observed:

If barriers are needed to limit extension of the right to intervene, the criteria of

practical harm to the applicant and the adequacy of representation by others are better suited to the task. *Smuck v. Hobson, supra*, 132 U.S.App.D.C. at 377, 408 F.2d at 180.

In this case, however, the asserted interest and its impairment are intimately bound together. For Opelka's interest is no different from that of all members of AIREA or all jointly designated members of AIREA and SREA, a fact which is emphasized by the addition of 71 such individuals as proposed intervenors by amendment to the complaint for intervention. The interest asserted is one that involves not being bound by the terms of the proposed settlement agreement and order. However, the terms of the agreement and order make clear that no individual member of AIREA is bound as such. The agreement and order direct AIREA to take certain actions. But since these actions are to be taken by the organization as such, there is no apparent way in which Opelka, or any member of AIREA or SREA, could violate the agreement and order and thereby become subject to enforcement proceedings.

■ In *Smuck v. Hobson, supra*, the court rejected efforts by a former superintendent of schools and a member of the Board of Education of the District of Columbia to intervene as of right or to appeal a district court order which had found that the Board had, in a variety of ways, acted unconstitutionally in administering the school system. The court concluded that the ex-superintendent did not have an interest sufficient to allow intervention because:

The original decision was not a personal attack upon [him], nor did it bind him personally once he left office. *Smuck v. Hobson, supra*, 132 U.S.App.D.C. at 374, 408 F.2d at 177.

The board member was found to have no appealable interest because the Board had been sued as a collective entity and the order was enforceable against the Board alone as such. *Id.*, 132 U.S.App.D.C. at 375, 408 F.2d at 178. So too, here, Opelka has no separate interest as an individual in the

litigation which could be affected by the settlement order since the order cannot be enforced against him nor can he violate it. *See also Rios v. Enterprise Ass'n Steamfitters Local U. 638*, 520 F.2d 352 (2d Cir. 1975). .

■ However, even assuming that Opelka satisfies the "interest" and "impairment" requirements, his application for intervention is legally insufficient because he does not show that his interest is one which may be inadequately represented by an existing party. The burden of establishing inadequacy of representation rests on the applicant. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). And although that burden is minimal, it must nonetheless be met. *Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976).

Opelka alleges that the governing council of AIREA is adverse to himself and to the Institute. He claims this inadequacy of representation is shown by the alleged "nonfeasance" of the governing council in failing to apprise him and other AIREA members of the litigation's development and to provide them with an opportunity to review or to vote on the proposed settlement agreement.[4] The United States argues that Opelka's interests, and that of all voluntary members of the Institute, are adequately represented by AIREA.

In *United States v. Board of School Commissioners of Indianapolis*, 466 F.2d 573 (7th Cir. 1972), the court of appeals affirmed a district court's denial of a petition to intervene in a school desegregation case by a corporation, Citizens of Indianapolis for Quality Schools ("CIQS") and a number of students. CIQS sought to challenge the entry of a consent decree and stipulations between the government and the school board. The court conceded that requirements of interest and impairment had been met, but found the proposed intervenors

had not demonstrated that their interest was inadequately represented by the school board. The court established a standard for determining the adequacy of representation:

> [R]epresentation is adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor and if the representative does not fail in the fulfillment of his duty. *Id.* at 575.

The proposed intervenors' claims that the school board, by entering into the consent decree and stipulation, had "failed to assert [the proposed intervenors'] interests as vigorously and effectively as [they] would have had they been parties to the litigation" were insufficient to establish inadequacy of representation. *Id.* Opelka's claims are likewise insufficient.

■ Opelka does not allege directly that there is any collusion between the United States and AIREA; and it is clear that there is none. As *United States v. Board of School Commissioners of Indianapolis, supra*, demonstrates, entry into a proposed settlement does not constitute such collusion *per se.* Here, AIREA initially responded to the complaint by filing an answer which, in addition to denying the substantive allegations of the complaint, raised statutory and constitutional defenses. The proposed settlement agreement and order is the product of negotiations between AIREA and the United States Department of Housing and Urban Development, scheduled prior to this litigation and continued thereafter, with the Department of Justice joining the negotiations. The court cannot conclude that the decision to enter into the settlement order rather than engage in what promises to be, in light of proceedings thus far, extensive, costly and complex litigation, evidences in any way collusion on the part of AIREA and the United States.

---

4. Opelka also alleges that the governing council lacked power to enter into the settlement agreement and hence its acts are *ultra vires.* There is no merit in this contention. *See* Ill. Rev.Stat. ch. 32, § 163a4(b), (p). The Insti-

tute's by-laws vest control of its affairs in the governing council, except that the membership elects the council and approves all amendments to the articles of incorporation.

**1082**

■ Equally clearly, AIREA does not have or represent an interest adverse to petitioner. The purpose of a professional organization is to further the interests of its members. Where a party litigant is charged with representing the proposed intervenor's interests, a compelling showing is required to demonstrate that this representation is inadequate. *United States v. International Business Machines Corp.*, 62 F.R.D. 530, 536 (S.D.N.Y.1974), citing 7A Wright & Miller, Federal Practice & Procedure, Civil § 1909 (1972); Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv.L.Rev. 721, 748 (1964). In *Stadin v. Union Electric Co.*, 309 F.2d 912 (8th Cir. 1962), *cert. denied*, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963), a shareholder sought to intervene as a party plaintiff in two civil antitrust actions brought by his corporation. Following the refusal by the board of directors and shareholders to bring certain suits, the shareholder sought to intervene, alleging that the directors' refusal to bring suit and purchase of certain equipment on behalf of the corporation "at rigged prices" was not in good faith and was a breach of trust; and that the corporation's attorney and director inadequately represented the shareholder's interest because he was not on friendly terms with the shareholder and had voted against the shareholder's proposals. Noting that the allegations of the proposed intervenor were to be taken as true, the court nonetheless added the caveat that this

> does not mean . . . all statements in pleadings of this kind are to be accepted as true irrespective of their nature or content. . . . [O]nly matters well pleaded . . . are entitled to the preferential status of assumed truth. Conclusory statements are not. *Id.* at 917.

The court then examined the shareholder's allegations, finding:

> [T]hey speak of management's voting against the Stadin resolution and they charge that this bespeaks condonation and bad faith. These latter characterizations are only the pleader's conclusions.

. . . We cannot escape the conclusion that Stadin's complaint as to inadequacy of representation lies largely in the area of asserted disagreement between lawyers as to how litigation should be conducted. Mere difference of opinion among attorneys is not of itself inadequate representation within the meaning of the Rule. If it were, intervention as of right would become almost automatic. *Id.* at 919.

■ Piercing the allegations of Opelka's complaint, the court finds the asserted inadequacy of representation is only the pleader's conclusion based on a difference of opinion as to how this litigation should be conducted. Opelka points to the Institute's failure to keep members apprised of the litigation's progress and concludes that its failure to present the proposed settlement agreement to AIREA membership for approval demonstrates inadequacy of representation. But the governing council had no such obligation. The by-laws of the Institute vest control of its affairs in the governing council. Relevant state law confers on the Institute the power "[t]o sue and be sued, complain and defend, in its corporate name." Ill.Rev.Stat. ch. 32, § 163a4(b). The failure to submit the proposed settlement order to the membership for approval does not evidence inadequacy of representation, in light of the by-laws and state statute. Opelka makes no allegation of bad faith, but only of bad judgment, in that he believes the governing council has not asserted the membership's interests as vigorously and effectively as he would have. That he would have utilized different litigation tactics does not mean that the governing council inadequately represents his interests in this litigation as a member of AIREA.

■ AIREA's entry into the settlement agreement does not amount to a failure to fulfill its duty to represent its members, for much the same reasons as discussed above. In *Alleghany Corp. v. Kirby*, 344 F.2d 571 (2d Cir. 1965), *writ of cert. vacated as improvidently granted*, 384 U.S. 28, 86 S.Ct.

1250, 16 L.Ed.2d 335 (1966), shareholders sought to intervene in a derivative action following a decision by the board of directors not to petition for a writ of certiorari. The court declined to determine the issue of adequacy of representation on the basis of the soundness or improvidence of the board's decision to terminate the litigation. The court stated:

Adequacy of representation . . . depends not on our assessment of whether the Board should have authorized a certiorari petition, but rather on whether shareholder interests were fully and fairly considered when the Board reached its decision. Stated somewhat differently, the mere fact that a particular decision is adverse to certain interests does not necessarily mean those interests were not adequately represented in the decision-making process or in the decision itself. *Id.* at 574.

In this case, AIREA's entry into the proposed settlement agreement does not mean that it failed in its duty to represent membership interests. And, absent allegations of collusion or bad faith, the court will not delve into the decision-making process of the governing council nor into the soundness of its decision to terminate this litigation rather than pursue it to judgment on the merits. The fact that Opelka's opinions did not prevail in the governing council does not mean that those opinions were not fully and fairly considered. Accordingly, the court concludes that he is not entitled to intervene as of right to challenge the settlement agreement.

## IV.

The court thus turns to a determination of whether Opelka should be permitted to intervene on a permissive basis. The court notes that the numerous objections to the settlement agreement and order raised by Opelka are also raised by the Society. Where the proposed intervenor merely underlines issues of law already raised by the primary parties, permissive intervention is rarely appropriate.

Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.,* 51 F.Supp. 972, 973 (D.Mass.1943).

Therefore, the court declines to allow full-scale intervention which will inevitably bring about delay, repetition and the clouding of issues involved in the original cause of action. *See Stadin v. Union Electric Co., supra* at 920.

However, it is appropriate to allow Opelka to intervene to address the merits of the settlement agreement. The district court's discretion under Rule 24(b), Fed.R. Civ.P., includes the latitude to limit intervention to particular issues. *Van Hoomissen v. Xerox Corp.,* 497 F.2d 180, 181 (9th Cir. 1974); *Ionian Shipping Co. v. British Law Ins. Co.,* 426 F.2d 186, 191–92 (2d Cir. 1970). Opelka has indicated that, if granted leave to intervene, he will adopt the arguments made and authorities cited in his memorandum of law in support of his application for leave to intervene and in opposition to the proposed settlement order. The primary parties to this litigation have no objection to Opelka's permissive intervention so long as it is limited to challenges to the settlement he makes in his memorandum. Accordingly, the court grants Opelka leave to intervene on a permissive basis, limiting that intervention to the arguments raised by him that the settlement agreement and order infringe his first amendment rights.

## V.

In many respects, a consent decree is a contract between the parties thereto. *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37 n.10, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). Although it must have judicial approval, a court reviewing such a decree does not inquire into the precise legal rights of the parties. *See Florida Trailer and Equipment Co. v. Deal,*

284 F.2d 567, 571 (5th Cir. 1960). However, the court must be certain that "there has been valid consent by the concerned parties and that the terms of the decree are not unlawful, unreasonable, or inequitable." *United States v. City of Jackson, Mississippi*, 519 F.2d 1147, 1151 (5th Cir. 1975).

· It has been recognized that consent decrees are "highly useful tools." *Id.* While waiving their right to litigate the issues involved in the suit, parties "save themselves the time, expense, and inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). Most important, however, "the agreement reached . . . embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation." *Id.* "[T]he inherent nature of a compromise is to give up certain rights or benefits in return for others." *MacDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 429. (7th Cir. 1977). Hence, a consent decree is not a precise delineation of legal rights.

■ With these principles in mind, the court turns to decide whether the proposed settlement agreement and order in this case are valid. First, the court finds that AIREA consented to the agreement and order. The agreement and order are the result of extensive negotiations not only between AIREA and the United States, but between AIREA and OFHEO/OVC. AIREA and HUD had agreed, prior to institution of this litigation, that possibilities of developing an affirmative action program for AIREA would be explored. After this suit was filed, the United States initially sought to terminate the discussions, but later consented to their continuance, provided government representatives could be present. As negotiations proceeded, the United States and AIREA found that settlement could be reached. AIREA agreed to adopt the statement of general policies which it had determined reflects sound appraisal practices; the United States determined to its own satisfaction that the policies satisfy the requirements of the Fair Housing Act. The court thus finds that there has been a valid consent by the concerned parties. Second, the court finds that, as to AIREA, the terms of the decree are not unlawful, unreasonable, nor inequitable. While it is true that the parties may have surrendered certain rights and benefits they might have vindicated or obtained through litigation, the surrender was in return for other rights and benefits.

■ The Society of Real Estate Appraisers raises several objections which, it argues, bar the court's approval of the settlement agreement and order. First, SREA argues that judicial approval of the settlement agreement and order places a judicial imprimatur on a specific theory of real estate appraisal, thereby stifling the exchange of ideas within the profession and condemning alternative theories. This argument overstates the effect of the settlement agreement and order. A consent decree is not a litigated judgment on the merits. The court's approval of the settlement agreement and order is not the judicial adoption of the real estate appraisal policies adopted by the parties therein. Rather, it is an approval of a compromise between the parties as validly consented to and not unlawful.

■ Second, SREA argues that the court's approval of the settlement agreement and order will irreparably prejudice SREA's defense to this action. In *United States v. City of Jackson, Mississippi, supra,* the United States and black municipal employees brought separate suits to remedy alleged racial discrimination in employment. The district court rendered judgment in the government's suit on a consent decree providing for injunctive relief and back pay to incumbent and former employees. In rejecting the employees' motion to intervene and to block the decree on the ground that its *stare decisis* effect would impair their efforts to obtain relief, the court stated:

This argument gives insufficient consideration . . . both to the significant differences between a consent decree and

a litigated judgment on the merits and to the good sense of the federal trial bench. . . . We cannot assume that courts will not recognize the special characteristics and purposes of consent decrees. To the contrary, we believe that courts fully understand that such decrees do not purport to be definitive statements of the parties' legal rights and will accord them little or no weight in the determination of the rights of persons not party to them. *Id.* at 1151–52.

*Cf. Air Lines Stewards & Stewardesses Ass'n, Local 550 v. American Airlines, Inc.,* 455 F.2d 101, 106 (7th Cir. 1972). So too, here, the settlement agreement and order between the United States and AIREA should have no effect on the determination of SREA's rights.

■ Third, SREA argues that entry of the order will adversely affect SREA professionally. The Society argues that it will suffer lost business and diminished enrollment because potential clients and students will fear that by working with SREA they will be violating federal law. SREA also argues that appraisers who are joint members of AIREA and SREA will be placed in an untenable position and may resign from SREA to avoid violating federal law. Again, this argument overestimates the consequences of a consent decree. Moreover, it is speculative.

■ Opelka joins in SREA's objections, which this court rejects, and raises several of his own. He argues that, by the terms of the agreement and order, he may neither consider or communicate ideas pertaining to racial and ethnic factors which he believes to be relevant to the appraisal profession. Thus, he argues, the order impermissibly infringes on his first amendment rights. *See Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). The short answer to this argument, as discussed in Part III, *supra,* is that the order does not bind him because he is not a party. It cannot be enforced against him nor can he violate it. Under these circumstances, it does not violate his first amendment rights.

■ The fact that Opelka, as a member of AIREA, is bound by its by-laws does not change this court's view for these reasons. First, there is nothing in the record to indicate the by-laws of the Institute have been altered by the settlement agreement and order. Second, without the force of governmental sanctions behind the by-laws, it is unclear that any first amendment problem is necessarily raised by the Institute's requirement that he comply with its by-laws or professional canons as a condition of continued membership. *See Cannon v. University of Chicago,* 559 F.2d 1063, 1068–71 (7th Cir. 1977); *Driscoll v. International Union of Operating Engineers, Local 139,* 484 F.2d 682, 690 (7th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974); *compare Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Third, and most importantly, whether in the future Opelka may be adversely affected, and his legal rights infringed, by some AIREA action, either pursuant to the settlement agreement and order or otherwise, is a question that is not ripe for decision. We cannot adjudicate that issue on the basis of predictions about the possible conduct of either Opelka or AIREA; their behavior turns on contingencies and requires guesses about the future. In substance, Opelka requests this court "to provide [him] with guidance for the future rather than to resolve a pending or threatened controversy between adverse parties. [The court has] no power to render such advice . . . ." *Hanover Township Federation of Teachers, Local 1954 v. Hanover Community School Corp.,* 457 F.2d 456, 463 (7th Cir. 1972). Therefore, whether, at some future date, AIREA might act in some way as to infringe Opelka's legal rights is a question this court cannot reach. For the reasons stated, the court hereby approves the settlement order, the agreement, and the confidentiality order between the United States and AIREA and orders their immediate entry.