**WEBCOR ELECTRONICS, Plaintiff,**

v.

**John V. WHITING, et al., Defendants.**

**REPCO INCORPORATED, Counterclaimant,**

v.

**WEBCOR ELECTRONICS, et al., Counterclaim Defendants.**

**Civ. A. No. 83–155 MMS.**

United States District Court, D. Delaware.

March 23, 1984.

Louis J. Finger, Richards, Layton & Finger, Wilmington, Del., for Webcor Electronics; Fran M. Jacobs, Shea & Gould, New York City, of counsel.

Richard E. Poole and Donald J. Wolfe, Jr., Potter Anderson & Corroon, Wilmington, Del., for individual defendants and Repco Inc.; Howard B. Possick and Russell M. Blau, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., of counsel.

Joseph A. Rosenthal, Morris & Rosenthal, Wilmington, Del., for intervening plaintiff Polak; William Klein, II, Tenzer, Greenblatt, Fallon & Kaplan, New York City, of counsel.

Kenneth J. Nachbar, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants Communications Industries, Inc. and Secode Electronics, Inc.; Hubert A. Crouch, III, Gardere & Wynne, Dallas, Tex., of counsel.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

The Court has before it Anthony G. Polak's motion to intervene as a derivative plaintiff. The present derivative plaintiff, Webcor Electronics, Inc. ("Webcor"), initiated this action on March 21, 1983, as a major stockholder in Repco Incorporated ("Repco"). Webcor named as defendants Repco, the directors of Repco, Communications Industries, Inc. ("CI") and Secode Electronics, Inc. ("Secode"), a wholly owned subsidiary of CI. Webcor charged the defendants with violating the federal securities laws and with breaching their common law fiduciary duties in a series of transactions designed by Repco's directors to maintain control of Repco and to fend off a proxy fight by Webcor. In particular, Webcor alleged that the Repco directors caused Repco to purchase substantially all of the operating assets of Secode from CI in return for 168,000 shares of Repco common stock and $250,000 in cash. This price, Webcor alleged, was grossly excessive to the value of Secode and was paid solely so that Repco's directors could retain voting power in friendly hands. A press release announcing the Secode acquisition, Webcor further alleged, contained material misstatements and omissions in violation of section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. Webcor sought to enjoin or rescind the Secode deal, to enjoin commingling of purchased Secode assets with Repco assets, and to enjoin CI from voting its Repco stock acquired in the transaction.

This Court denied Webcor's motion for a temporary restraining order on March 21, 1983. All defendants then filed motions to dismiss.[1] Webcor's answering brief to the dismissal motions asserted new allegations not mentioned in its complaint. Repco, Webcor asserted, failed to disclose a "put" which gave CI the option to resell to Repco, twelve months after the closing of the Secode deal, all Repco shares it received in the transaction at a discounted price of $9.825 per share. In addition, Webcor stated, Repco failed to disclose several resolutions passed by Repco's directors designed to entrench themselves in control, including proposals to stagger the terms of directors and to grant loan and security agreements to certain Repco officers for the purchase of Repco common stock.

Before the Court could rule on the then pending motions, the parties entered into a settlement agreement on April 29, 1983 (the "April Settlement"). This settlement required Repco to purchase all of Webcor's shares of Repco common stock at $10.25 per share plus interest. In addition, the settlement placed certain limits on Repco's ability to make future acquisitions and granted CI a security interest in Secode's inventory and equipment to secure a portion of Repco's put obligation. All claims in the litigation were to be dismissed with prejudice, with Repco and CI paying $122,-000 of Webcor's attorney's fees.

After notice to stockholders was distributed, but before the Court could rule on the proposed settlement, Repco discovered that it could not obtain the financing necessary to purchase Webcor's shares without violating certain covenants Repco had with its bank. Repco's board therefore withdrew its support for the proposed settlement. The Court held a settlement hearing on July 13, 1983, at which Polak and other Repco stockholders objected. Because of the turn in events involving Repco's bank

---

1. CI and Secode also moved to transfer.

financing, the Court deferred ruling on the settlement and encouraged the parties to begin a new round of negotiations with the object of reaching a new compromise.

On July 29, 1983, a second settlement agreement (the "July 29 Agreement") was reached among Webcor, Repco and certain of their officers and directors. The new compromise, instead of eliminating Webcor's holdings in Repco, placed Webcor in a controlling position by giving Webcor the right to name six out of eight Repco directors. In addition, the July 29 Agreement terminated the April settlement; required dismissal with prejudice of this litigation; released all claims relating to the events underlying this action; terminated the three-year employment agreements between Repco and its six officers, replacing the agreements with one-year contracts; terminated the loan and security agreements between Repco and its officers; provided Webcor with $260,000 in attorney's fees; and gave Webcor the interest payments it was entitled to under the April Settlement. The July 29 Agreement to a large extent has already gone into effect. Webcor designees now control the Repco board,[2] the loan and security agreements between Repco officers and Repco have been terminated, Repco has made the interest payment to Webcor, and the one-year employment agreements have been executed.

The July 29 Agreement was submitted for Court approval on October 5, 1983.[3] On October 7, 1983, Polak filed his motion to intervene accompanied by a proposed intervenor's complaint. At a scheduling hearing held on October 14, 1983, Polak urged the Court to delay sending notice of the July 29 Agreement to Repco stockholders until his motion to intervene was ruled upon. Webcor and Repco argued that the Court should not rule on the motion to intervene but should proceed with stockholder notification and hold a hearing on the fairness of the settlement. Only if the Court rejected the settlement, Repco and Webcor argued, would it be appropriate to consider Polak's intervention.

At the October 14, 1983, scheduling hearing, the Court indicated that as either an objector or an intervenor Polak would have a right of discovery into the fairness of the settlement. *See Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975); 3B *Moore's Federal Practice* ¶ 23.1.24[2] at 23.1–137. The intervention question thus had little practical effect on the outcome of this litigation. (*See* Doc. 60 at 30–31). After making these observations, the Court left it with the parties to either agree on the intervention question by stipulation or notify the Court that they wanted to fight the question through adversary briefing. (Doc. 60 at 31, 34). An order was entered on October 18, 1983, deferring notification of stockholders pending resolution of Polak's motion to intervene.

Unfortunately, the parties have decided to brief and argue this superfluous procedural question. Unless Polak believes that as an intervenor he can unilaterally block Webcor and Repco's efforts to place their compromise before the Court at a fairness hearing—a position that he has not openly taken in his briefs [4]—then at this stage of the litigation his title as an "intervenor" or "objector" holds no importance. The Court, nonetheless, is forced to decide the issue.

---

**2.** Webcor's designees were at first substituted by the old Repco directors and then elected to full terms at a September 27, 1983, stockholders' meeting.

**3.** The Court learned at oral argument on March 14, 1984, that Repco and CI have recently reached an agreement, not reflected in the July 29 Agreement, whereby CI's put will be reduced from $1.6 million to $1 million. This agreement has not yet been reduced to writing or filed with the Court.

**4.** *Cf.* Doc. 74, tr. at 21 (statement by counsel for Polak at oral argument suggesting that Polak could block settlement if granted intervention as a derivative plaintiff). The law is not clear that if granted intervenor status Polak could foreclose the Court from approving a fair and reasonable compromise and from dismissing the action. *See Denicke v. Anglo California Nat'l Bank,* 141 F.2d 285 (9th Cir.1944); 3B *Moore's Federal Practice* ¶ 23.1.24[2] at 23.1–139.

Polak argues that Webcor's acceptance of the April and July compromises disables Webcor from continuing as a derivative plaintiff and gives Polak the right to intervene under Rule 24(a)(2),[5] or at least permits him to intervene under Rule 24(b)(2).[6] He asserts that Webcor is no longer a proper derivative plaintiff because it now controls Repco, has the same general counsel as Repco, and is contractually committed to dismiss this litigation. Furthermore, Polak argues, by agreeing to unfavorable terms in both the April and July compromises Webcor's adversary relationship with defendants is "tainted." (Doc. 62 at 3). In particular, Polak explains, 1) Webcor attempted to "sell out" to Repco under the April Settlement, leaving the Secode purchase intact even though it knew that the transaction was a bad business deal; 2) Webcor "extracted from Repco a commitment to pay interest" (Doc. 62 at 3) under the April compromise and keeps that interest under the July 29 Agreement even though the April Settlement was not approved by the Court; and 3) Webcor's discovery was inadequate, taking place during only four days before Webcor entered into the April settlement agreement.[7]

The briefs opposing Polak's intervention motion all contend that Polak should not be

5. Fed.R.Civ.P. 24(a)(2) provides that:

   Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

6. Fed.R.Civ.P. 24(b)(2) provides that:

   Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

7. Polak also argues that he should be allowed to intervene because his complaint is broader than Webcor's. His brief in support of intervention attempts to outline the differences between his intervening complaint and Webcor's complaint. I find only one distinction: Polak adds to Webcor's complaint allegations against Webcor and defendants arising out of the two compromise agreements. These new allegations appear in two counts. Count one alleges that the old settlement and new settlement are part of a scheme by the old Repco directors to defraud Repco and its stockholders. Count two alleges that Webcor engaged in a fraudulent scheme by agreeing to the July 29 Agreement and by keeping interest payments due under the April Settlement.

Polak argues that his allegations are broader than Webcor's because Webcor did not mention the CI "put" and did not adequately define the Repco directors' effort to "Lockup" control and "Lockout" Webcor. Webcor's notice pleading did, however, attack the essence of the Secode transaction and, as explained earlier, Webcor expanded on its allegations in its brief opposing defendants' motions to dismiss. Thus, but for the new allegations arising from the April and July compromises, Polak's complaint is essentially redundant of Webcor's position.

Polak's proposed intervening complaint demonstrates Polak's agreement with the heart of Webcor's complaint—the alleged efforts by Repco to block Webcor's efforts to gain control of Repco. Polak's complaint asserts that the "Lockout" of Webcor was "deliberately malicious, arbitrary and ill-conceived" in that:

(1) The businesses of Repco and Webcor were a natural "fit."

(2) Webcor offered Repco longtime, well-established, accepted management experience and know-how.

(3) Webcor had the financial expertise and know-how of the management of a well known public company, which was far more sophisticated than that of the Repco management....

(4) Webcor was just completing a successful public financing and was recommended as an investment with good prospects, by reputable inventment [sic] banking and brokerage firms.

(Doc. 55 at 24-25).

In fact, but for the proposed settlement, Polak would apparently have been content to ride out Webcor's prosecution of this case. As counsel for Polak stated in the July 13 hearing on the April settlement, Polak was "delighted to have [Webcor] come in here and try to rescue the company. They are the only one who can." (Doc. 51 at 72).

permitted to intervene at this stage in the litigation because intervention would interfere with the proper settlement of the action.[8] His attack on the proposed compromise, they argue, can be fully presented when a fairness hearing is held on the July 29 Agreement. They assert that Polak's sole purpose in seeking intervention is to unilaterally veto a settlement agreement that was reached through vigorous adversary negotiations between the present parties to the litigation.

■ The Court agrees with Polak's opponents that intervention should not be allowed at this time. Polak's arguments in favor of intervention require acceptance of his contentions that the proposed settlement between Webcor and Repco is fraudulent and unfair to Repco's stockholders. The Court at this time, having not yet held a settlement hearing, does not know if the compromise is fair, does not know if Webcor adequately represents the Repco stockholders' interests, and therefore does not know if Polak has a right to intervene under Rule 24(a)(2) or if he should be permitted to intervene under Rule 24(b)(2). The mere fact that Webcor has ceased prosecuting its claims in favor of compromise, without proof of fraud, collusion or

bad faith, does not *per se* strip Webcor of its capacity as an adequate derivative plaintiff. *See United States v. American Institute of Real Estate Appraisers*, 442 F.Supp. 1072, 1083 (N.D.Ill.1977), *appeal dismissed*, 590 F.2d 242 (7th Cir.1978) (decision to terminate litigation does not, absent bad faith or collusion, constitute inadequate representation). *See also Delaware Valley Citizens' Council For Clean Air v. Pennsylvania*, 674 F.2d 970, 973–74 (3d Cir.1982) (fact that proposed intervenor defendants would not have entered into consent decree does not mean that defendants did not adequately represent their interest in the litigation); *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976) (same). The Court will therefore defer ruling[9] on Polak's intervention motion until after a hearing is held to determine the fairness of the proposed settlement. If Polak's allegations there prove correct—that the settlement terms are unfair and fraudulent—then Webcor very likely will not be allowed to continue prosecuting this action as a derivative plaintiff.[10]

■ Although research has revealed no direct precedent on point,[11] it did uncover

**8.** The parties have not argued that Polak's motion is not a "timely application" within the meaning of Rule 24(a) in the sense of it being filed too late in the litigation, apparently agreeing with Polak that he only became aware of Webcor's alleged inadequate representation after it entered into the proposed compromises with defendants. *See* 3B *Moore's Federal Practice* ¶ 24.13.

**9.** The individual defendants suggested in their brief opposing Polak's motion to intervene that Polak might be granted a "limited" intervention right precluding him from prosecuting the case during pendency of settlement proceedings. As a matter of caution, the Court has chosen instead to defer its ruling on Polak's intervention right because of concern that the Third Circuit Court of Appeals might not approve of limited intervention under Rule 24(a)(2). *See Cerro Metal Products v. Marshall*, 620 F.2d 964, 969 n. 7 (3d Cir.1980).

**10.** *See e.g. Central States Welfare Fund v. Old Security Life Ins. Co.*, 600 F.2d 671 (7th Cir. 1979); *Pyle-National Co. v. Amos*, 172 F.2d 425 (7th Cir.1949); *see also* 3B *Moore's Federal Practice* ¶ 24.07[4], at 24–68.

**11.** In *Winkelman v. General Motors Corp.*, 48 F.Supp. 490 (S.D.N.Y.1942), the district court did grant intervention to a class member who objected to a proposed compromise but did so "solely for the purpose of having the fairness and adequacy of the settlement reviewed on appeal...." *Id.* at 499. The law is now settled that objectors may appeal a court's decision approving a settlement. 3B *Moore's Federal Practice* ¶ 23.80[5].

Courts have allowed intervention by *non-parties* and *non-class members* who did not have the objector rights that Polak has to challenge settlements. *See e.g., United States v. American Institute of Real Estate Appraisers*, 442 F.Supp. 1072 (E.D.Ill.1977), *appeal dismissed*, 590 F.2d 242 (7th Cir.1978) (individuals allowed to intervene to challenge aspect of settlement by Association that allegedly infringed on their first amendment rights); *Pyle-National Co. v. Amos*, 172 F.2d 425 (7th Cir.1949) (shareholders may intervene when corporation, in suit against former officers, refused shareholders' demand to amend complaint to name present directors as defendants and when corporation entered into settlement within four days of demand).

several cases in which courts have hinged a party's right to intervene on the court's evaluation of the adequacy of a proposed settlement. In *Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir.1981), *aff'd on rehearing*, 670 F.2d 71 (6th Cir.1982), a Title VII sex discrimination suit, several class members objected to a settlement entered into by the two individual class representatives. The settlement awarded damages to the named plaintiffs but provided the other class members with only a procedural mechanism for processing their individual claims. The objectors, besides challenging the settlement, sought to intervene, arguing that "by agreeing to the revised proposed settlement [the class representatives] had not adequately represented their interests." *Id.* at 1219. The district court approved the settlement and denied the intervention motion. The Sixth Circuit Court of Appeals reversed the district court's settlement approval, finding that the benefits to class members "pale[d] in comparison to the awards provided the named plaintiffs...." *Id.* at 1226. Then, after finding the settlement inadequate, the Appellate Court reached the intervention question:

> Since we agree that the Settlement Agreement approved by the court was strongly against the interests of the class members, we conclude that the district court erred in denying the appellants' motion to intervene.

*Id.* Thus, although the *Franks* court did not address the specific timing question now before this Court, it apparently linked its ruling on intervention with its initial evaluation of the proposed compromise.

A similar procedure was applied in *Feder v. Harrington*, 58 F.R.D. 171 (S.D.N.Y. 1972). There a party objected to a proposed settlement of a class action suit brought under section 10(b) of the Securities Exchange Act. The court initially addressed, and dismissed, the proposed intervenor's objection to the settlement. Then, turning to the motion to intervene, the court explained that "the approval of the settlement also disposes of objectant's motion to intervene."[12] *Id.* at 177.

In still other cases courts have denied motions to intervene based in part on the proposed intervenors' opportunity to present objections at fairness hearings. *See Stotts v. Memphis Fire Department*, 679 F.2d 579, 584 (6th Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 297, 74 L.Ed.2d 280 (1982); *Officers For Justice v. Civil Service Commission*, 473 F.Supp. 801, 829–30 (N.D.Cal.1979), *aff'd*, 688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 288–89 (N.D.Cal.1976); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 289, 295 (N.D.Cal.1976), *aff'd*, 572 F.2d 657 (9th Cir.), *cert. denied*, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978).

Polak asserts that if his intervenor complaint is not accepted as a complaint in this action any settlement notice sent to stockholders would be misleading; objectors appearing at a fairness hearing, he further argues, would be unable to fully contest the proposed compromise. The Court disagrees. The notice to stockholders, before receiving approval from this Court, will be required to include a full and fair description of Polak's allegations and how they deviate from those contained in Webcor's complaint. At the settlement hearing Polak and other objectors will be entitled to raise any arguments reasonably related to the question of whether the compromise is fair, reasonable and adequate. This includes arguments, for example, that Webcor has "sold out" the Repco stockholders, that the settlement disproportionately compensates Webcor in comparison to Repco and its stockholders, or that the settlement is inadequate because it is based on the narrow claims contained in Webcor's original complaint instead of the allegedly broader claims contained in Polak's proposed intervenor complaint. If the settlement is then disapproved because of Polak's objections, the Court will more than

---

12. The objector in that case, unlike Polak, apparently moved to intervene upon the condition that his objection to settlement be sustained. 58 F.R.D. at 177 n. 19.

likely grant his motion to intervene. In the meantime, Polak's rights will be fully protected as an objector.

An appropriate order will be issued.