Vincent ZUCH et al., Plaintiffs,

v.

John H. HUSSEY et al.,
Defendants.

Civ. A. No. 38757.

United States District Court,
E. D. Michigan, S. D.

Oct. 18, 1973.

**554**

Theodore M. Rosenberg, Flint, Mich., John F. Burns, Detroit, Mich., for plaintiffs.

William C. Potter, Jr., Ernest Levin, Detroit, Mich., for defendants.

Alphonso R. Harper, Detroit, Mich., for defendants Charles F. Graham, Herb Stoffer, Muriel Skinner, Edward M. Pruett, Bowers Realty & Investment Co., Lawrence C. Humphrey c/b/a Four Star Realty, Hayward W. Richardson Realty Co., Frank Jackson d/b/a Grand Oaks Realty Co.

George Hogg, Jr., and William C. Potter, Jr., Detroit, Mich., for defendants C. Schuett Realty Inc., Ben B. Miller and Jerry O'Rouke, Harrison Moore Realty Inc., Lexington House Real Estate Co., and Bernard O'Laughlin, Mayfair Realty Co., Jerry Borregard, Bill Willis, Joe E. Norwood No. 1 Inc. and Mark Zehnder.

### MEMORANDUM OPINION AND ORDER

KEITH, District Judge.

On August 16, 1972, plaintiffs filed this action pursuant to 28 U.S.C. § 1343(4) and 42 U.S.C. § 3612 to obtain remedy for alleged violations of the fair housing provisions contained in Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq. (The Fair Housing Act). This suit is a class action being brought before the court without jury against certain named defendants as representatives of larger classes composed of members of the real estate industry in the Detroit Metropolitan Area. Subsequent to the filing of the action, three motions to dismiss were filed by

various defendants.* A motion for a preliminary injunction was also filed by the plaintiffs and hearings were held on the motion in November and December of 1972. On instructions .from the Court, the matter was adjourned on December 7, 1972, without a date and the parties were directed to attempt to negotiate a settlement. The parties were not able to negotiate a settlement and requested that the Court determine certain issues as a matter of law to facilitate the proceedings. The Court concurred with the request and permitted the parties to submit any supplemental briefs they desired. Arguments were heard on July 3, 1973. The matters raised in arguments and briefs and the rulings of the Court are presented below.

## UNINVITED SOLICITATIONS IN TRANSITIONAL AREAS

In their complaint, plaintiffs have charged certain defendants with making uninvited solicitations of residential real estate listings in violation of the Fair Housing Act. Specifically, they contend that solicitations of listings are being made in racially transitional areas of Metropolitan Detroit where the solicitation itself implies race, even though no racial statements are being used, and provides a racial inducement for the sale of homes in violation of Section 3604(e) of the Fair Housing Act. Defendants contend that mere solicitation of a real estate listing, regardless as to where it is made, is not a violation under the provisions of the Act.

It is a well known fact that racial tensions and anxieties are generated when blacks move into most all-white neighborhoods. It is also well known that many real estate agencies attempt to exploit such a situation by making constant, uninvited solicitations for the sale of homes. In most instances, this activity (commonly referred to as "blockbusting") has proven to be an effective

means of stimulating the sale of homes in racially transitional neighborhoods because it capitalizes upon the racial ,fears of whites by reminding them that blacks are moving into the area. The process is articulated quite clearly in United States v. Mitchell, 335 F.Supp. 1004, 1005 (N.D.Ga.1971), where the United States District Court for the Northern District of Georgia stated:

"The evidence at the trial disclosed many illuminating things about what happens in a residential neighborhood when it becomes racially transitional. For example, if these cases are typical —and the court believes they are—the following consequences can be predicted as inevitable, and beyond dispute: First, a sense of panic and urgency immediately grips the neighborhood and rumors circulate and recirculate about the extent of the intrusion (real or fancied), the effect on property values and the quality of education. Second, there are sales and rumors of sales, some true, some false. Third, the frenzied listing and sale of houses attracts real estate agents like flies to a leaking jug of honey. Fourth, even those owners who do not sell are sorely tempted as their neighbors move away, and hence those who remain are peculiarly vulnerable. Fifth, the names of successful agents are exchanged and recommended between homeowners and frequently the agents are called by the owners themselves, if not to make a listing then at least to get an up-to-date appraisal. Constant solicitation of listings goes on by all agents either by house-to-house calls and/or by mail and/or by telephone, to the point where owners and residents are driven almost to distraction.

"In this maelstrom the atmosphere is necessarily charged with Race, whether mentioned or not, and·as a result there is very little cause or necessity for an agent to make direct representations as to race or as to what is

---

* One Motion to Dismiss by Defendant Durso Real Estate, Inc., has been granted by a

Consent Order of Dismissal filed on July 13, 1973.

going on. On the contrary both sides already know, all too well, what is going on. In short, for an agent to get a listing or make a sale *because* of racial tensions in such an area is relatively easy, whereas the direct *mention* of race in making the sale is superfluous and wholly unnecessary." (Emphasis by the Court.)

Section 3604(e) of the Fair Housing Act makes it unlawful:

> For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, or national origin."

■ The purpose of this section is to prevent persons from preying upon the fears of property owners in racially transitional areas and inducing panic selling which results in community instability. United States v. Mitchell, 327 F.Supp. 476, 479 (N.D.Ga.1971). In construing the term "representation" as used in the section, this Court recognizes that each provision of the Fair Housing Act is to be given a liberal construction in order for it to accomplish its purpose. See United States v. Northside Realty Ass. (No. 13932, N.D.Ga., December·29, 1971). In that regard, the representations prohibited by Section 3604(e) include the subtle, as well as the more obvious, forms of racial inducements to sell. It is · possible therefore for a representation to be a violation of the section even if race is not explicitly mentioned. See United States v. Mintzes, 304 F.Supp. 1305 (D.Md.1969).

A test for determining what conduct constitutes a prohibited representation under Section 3604(e) was provided in United States v. Mitchell, 327 F.Supp. 476 (N.D.Ga.1971), where the District Court stated:

> "A § 3604(e) 'representation' . . . would be any acts or words that would be likely to convey to a reasonable man, under the circumstances, the idea that members of a particular race, color, religion or national origin are or may be entering his neighborhood. Of course to fall within § 3604(e), the representation must also be made for profit and it must be made *to induce the sale* of the person's property." (Emphasis by the Court.)

■ This court accepts the above mentioned test as a valid and viable standard by which to determine prohibited representations under Section 3604(e) and concludes that uninvited solicitations of real estate listings in racially transitional neighborhoods are prohibited representations under the standard if it can be established (1) that the solicitations are made for profit, (2) that the solicitations are intended to induce the sale of a dwelling, and (3) that the solicitations would convey to a reasonable man, under the circumstances, the idea that members of a particular race are or may be entering the neighborhood.

### STEERING ON A RACIAL BASIS

Plaintiffs contend that steering on a racial basis ("steering") is prohibited by that portion of Section 3604(a) of the Fair Housing Act which makes it unlawful to "otherwise make unavailable or deny, a dwelling to any person because of race." As defined by plaintiffs, steering would include any word or action by a real estate broker or salesman which is used to influence the choice of a prospective homebuyer on a racial basis.

Section 3604(a) provides that it shall be unlawful:

> "To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, or national origin."

■ This section contains both specific and general prohibitions. The specific prohibitions make it unlawful, on the basis of race, (1) to refuse to sell or

rent after the making of a bona fide offer, and (2) to refuse to negotiate for a sale or rental. These two prohibitions are applicable in unmistakable circumstances. Under the general provision, the section makes it unlawful to "otherwise make unavailable" housing or to deny housing because of race. The foregoing phraseology appears to be as broad as Congress could have made it, and all practices which have the effect of making dwellings unavailable on the basis of race are therefore unlawful. In the application of Section 3604(a) with this broad prohibition, it has been held that the failure to provide a black applicant with necessary and correct information concerning what he must do to become a tenant discourages and impedes his application and results in his exclusion from apartments because of race. United States v. West Peachtree Tenth Corp., 437 F.2d 221 (5th Cir. 1971); see also United States v. Reddock, (No. 6541–71–P., S.D.Ala., January 27, 1972). It has also been held that the imposition of more burdensome applications procedures, of delaying tactics, and of various forms of discouragement by resident managers and rental agents constitutes a violation not only by those who impose these procedural roadblocks, but also by top management and owners who fail to set forth objective and reviewable procedures for apartment application and rental. United States v. Youritan Construction Company, 370 F.Supp. 643 (N.D.Calif.1973).

■ The same principles which were developed in the above cases with respect to the prohibitions under Section 3604(a) are applicable to circumstances involving prospective homebuyers. Accordingly, any action by a real estate agent which in any way impedes, delays or discourages a prospective homebuyer from purchasing housing on a racial basis is unlawful. This is in accord with the position taken in Mayers v. Ridley, 151 U.S.App.D.C. 45, 465 F.2d 630, 652–653 (1972) where the Court of Appeals for the District of Columbia stated that the Fair Housing Act was intended to have "the broadest objectives and scope" and to prohibit not only open, direct discrimination but also all practices which have a racially discouraging effect.

■■ It is the opinion of this Court that when a real estate agent actively undertakes an effort to influence the choice of a prospective homebuyer on a racial basis, the agent either directly or indirectly discourages the prospective homebuyer from purchasing a home in a particular area and fosters the perpetuation of racially segregated communities where available housing has been traditionally denied to blacks because of their race. The Court, therefore, concludes as a matter of law that steering is a violation of Section 3604(a) of the Fair Housing Law.

## ADMISSION OF EVIDENCE OF TELEPHONE SOLICITATIONS

During the course of the hearing on plaintiffs' Motion for a Preliminary Injunction, plaintiffs called as a witness Mr. James Schmitt for the purpose of proving that Defendant Harrison-Moore made an overt racial representation in violation of Section 3604(e) of the Fair Housing Act. Mr. Schmitt testified that in August 1972, he received a telephone call from a party who claimed to be calling on behalf of Defendant Harrison-Moore Realty, Inc. (hereinafter referred to as Defendant Harrison-Moore). When he was asked to relate the substance of the telephone conversation, Defendant Harrison-Moore objected to the admission of the testimony on the ground that no foundation had been laid to prove the call in fact came from said defendant, and that, in the absence of such foundation, the testimony was inadmissible. The Court permitted the testimony to be entered on a separate record with the understanding that the testimony would be stricken if it was found after a hearing on the matter that the testimony was inadmissible.

The witness in this instance did not initiate the telephone call and did not recognize the voice of the caller. Plain-

tiffs contend that the telephone conversation should be admitted against Defendant Harrison-Moore in spite of this because there is circumstantial evidence which corroborates the statements made by the caller that he was an agent of Defendant Harrison-Moore. The circumstantial evidence on which plaintiffs rely are the facts that: (1) Defendant Harrison-Moore has admitted making telephone calls to residents of Northwest Detroit to determine whether they were "interested in listing their property with it"; (2) the person who called Mr. Schmitt was making the same type solicitation, except that racial remarks were used; and (3) a number of other persons have stated in affidavits that they received telephone calls from individuals claiming to be agents of Defendant Harrison-Moore.

■ It is well established law with respect to telephone calls, that, if the person testifying does not recognize the voice of the caller, the surrounding circumstances may be sufficient to establish the identity of the caller and warrant the admission of the testimony. Van Riper v. United States, 13 F.2d 961 (2d Cir. 1926); Jarvis v. United States, 90 F.2d 243 (1st Cir. 1937). Plaintiffs and Defendant Harrison-Moore agree on this rule of law, but disagree on what constitutes sufficient circumstantial evidence to establish the identity of the caller. This determination is within the discretion of the trial judge. United States v. Johnston, 318 F.2d 288, 292 (6th Cir. 1963). A review of the cases on the subject shows that the circumstantial evidence must establish that it was improbable that anyone other than the defendant was the caller before there is sufficient proof of the defendant's identity as the caller. Van Riper v. United States, *supra*; Jarvis v. United States, *supra*; Hartzell v. United States, 72 F.2d 569, 578 (8th Cir. 1934); United States v. LoBue, 180 F. Supp. 955 (S.D.N.Y.1960).

■ The circumstantial evidence in this instance is sufficient to establish that Defendant Harrison-Moore did make solicitations for real estate listings by telephone which were similar to the solicitation made by the person calling Mr. Schmitt; however, the evidence is not sufficient enough to establish that it was improbable that anyone other than an agent of Defendant Harrison-Moore made the telephone call to Mr. Schmitt. The record suggests that many competing real estate agents were making telephone solicitations for real estate listings in the same area and at the same time as Mr. Schmitt's caller. Except for the fact that the caller stated that he was calling in behalf of Defendant Harrison-Moore, there is nothing else in the conversation which suggests that this particular call could have come from only the defendant. In view of this, this Court finds as a matter of law that Mr. Schmitt's testimony about the substance of the telephone conversation is inadmissible as evidence of Defendant Harrison-Moore's conduct. This Court is mindful of plaintiffs' claim that blockbusting by telephone is difficult to prosecute. Nevertheless, justice requires that the identity of the caller be reliably established before the substance of telephone conversations is admissible as proof of a defendant's actions.

■ At the hearing on December 6, 1972, plaintiffs also sought to introduce Mr. Schmitt's testimony for the purpose of showing the efforts to influence the racial climate in the community. Such testimony would be relevant to the question of whether or not uninvited solicitations of residential real estate listings were being made by some person or persons in violation of Section 3604(e). Therefore, the testimony concerning the telephone conversation will be admitted for this limited purpose.

## MOTIONS TO DISMISS

There are currently two motions before the Court to dismiss the Complaint with respect to certain defendants. One motion seeks to have the Complaint dismissed with respect to defendant Frank

Jackson d/b/a Grand Oaks Realty Company. The Court will deny this motion. The other motion seeks to have the Complaint dismissed as to Defendants Miller Brothers Realty Company and W. V. Cohn. The Court defers ruling on this motion until after further hearings have been held on the matter.