Austin **DUNN** et al., Plaintiffs,

v.

The **MIDWESTERN INDEMNITY MID-AMERICAN FIRE AND CASUALTY COMPANY** et al., Defendants.

No. C–3–78–105.

United States District Court,
S. D. Ohio, W. D.

June 20, 1979.

Ashley C. Brown, Dayton, Ohio, for plaintiff.

Robert C. Alexander, Neil F. Freund, Dayton, Ohio, for Midwestern.

Douglas K. Ferguson, Dayton, Ohio, for Borchers Ins. Co.

David W. Peck, Cincinnati, Ohio, for Commercial Union.

David C. Greer, Dayton, Ohio, for Hartford Ins.

Thomas E. Jenks, Dayton, Ohio, for American States Ins. Co.

Robert P. Bartlett, Dayton, Ohio, for P. Borden Grethouse.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court on the motion of defendant Midwestern Indemnity Company (Midwestern) for reconsideration of the Court's denial of Midwestern's 12(b)(6) motion.

On August 25, 1978, Midwestern's motion under Federal Rule of Civil Procedure 12(b)(6) was treated by the Court as a motion for summary judgment; and as a motion for summary judgment it was denied. Now, Midwestern moves to exclude all extraneous material and decide, as a matter of law, whether plaintiffs have stated a claim under the Fair Housing Act (the Act), 42 U.S.C. §§ 3601 *et seq.*[1] In view of Midwestern's withdrawal of all matters outside the pleadings, the Court shall reconsider its prior order, but limited to the following question: Whether plaintiffs have stated a claim upon which relief can be granted against Midwestern under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*[2]

The facts which generated this dispute as gleaned from plaintiffs' complaint may be briefly stated. Plaintiffs are black homeowners residing in a predominantly black neighborhood. In 1955, they purchased homeowner's insurance from defendant Midwestern through defendant Borchers Insurance Company (Borchers). Coverage was maintained until December 9, 1977, when Midwestern notified plaintiffs that their policy would not be renewed. Nonrenewal of plaintiffs' policy was predicated upon Midwestern's decision to terminate Borchers' business portfolio. Plaintiffs were advised by Midwestern to seek substitute coverage under the Ohio FAIR plan.

Plaintiffs contend that the decision to terminate Borchers' business portfolio was based on the fact that the portfolio included "a significant portion of black homeowners and/or persons residing in predominantly black neighborhoods." Plaintiffs charge that this practice, referred to as "insurance redlining",[3] is prohibited by Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 *et seq.*

1. Section 801 *et seq.* of Title VIII of the Civil Rights Act of 1968.

2. Amici briefs have been filed by the National Committee Against Discrimination in Housing, Inc. and The Housing and Credit Section, Civil Rights Division, United States Department of Justice.

3. For purposes of this motion, insurance redlining is defined as the restriction of insurance based on the racial composition of the neighborhood, apart from any consideration of risk.

In contrast, defendant Midwestern contends that Congress has considered the problems of insurance redlining and acted by passage of the McCarran Act, Urban Property and Protection Reinsurance Act of 1968 and the state FAIR plans. In addition, Midwestern asserts that neither the language of the Fair Housing Act nor the legislative history indicates an intent to include insurance redlining.

## I. *Applicable Law*

### A. Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6).

It is axiomatic that a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it is clear that the plaintiff can prove no state of facts in support of its allegations that would entitle him to relief. See *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1952). Thus, in considering a 12(b)(6) motion to dismiss, all material allegations of the complaint are to be taken as true and the complaint is to be construed in a light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

### B. Fair Housing Act of 1968.

Plaintiffs have charged that insurance redlining by defendant Midwestern constitutes a violation of §§ 3604, 3605 and 3617 of the Fair Housing Act. In construing this language as used by Congress, it is necessary to afford the provisions "a generous construction." *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 212, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972).

The Fair Housing Act[4] defines its policy "to provide within constitutional limitations, for fair housing throughout the United States.[5] In general, the Act prohibits discriminatory housing practices. A discriminatory housing practice is defined as "[any] act that is unlawful under Sections 3604, 3605, or 3606 of this title."[6] Although these sections do not explicitly proscribe insurance redlining, plaintiffs contend that the terms and history of §§ 3604(a) and (b), 3605 and 3617 establish an intent by Congress to embrace insurance redlining within the ambit of the Act.

### 1. Section 3604

#### a. Section 3604(a)

Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin." The phrase, "otherwise make unavailable or deny" has been broadly construed, and several courts have concluded that this language is "as broad as Congress could have made it." E.g., *United States v. Youritan Construction Co.*, 370 F.Supp. 643, 648 (N.D.Cal.1973), *aff'd. as modified*, 509 F.2d 623 (9th Cir. 1975); *Zuch v. Hussey*, 366 F.Supp. 553, 557 (E.D.Mich. 1973). Among others, § 3604(a) has been construed to proscribe the following practices: refusal to provide financing in racially integrated areas, "mortgage redlining," (*Laufman v. Oakley Bldg. & Loan Co.*, 408 F.Supp. 489 (S.D.Ohio 1976); the adoption of exclusionary ordinances by a municipality (*United States v. City of Parma*, P.H.E. O.H.Rptr. ¶ 13,616 (N.D.Ohio 1973)); the rejection by a noncommercial orphanage of minority orphans (*United States v. Hughes Memorial Home*, 396 F.Supp. 544 (W.D.Va. 1975)); the assignment of lower appraisal values to homes in racially integrated neighborhoods (*United States v. American Institute of Real Estate Appraisers*, 422 F.Supp. 1072 (N.D.Ill.1977)); a zoning ordinance which prohibited construction of any new multiple-family dwellings (*United States v. City of Black Jack, Missouri*, 508 F.2d 1179 (8th Cir. 1974)); the steering of a prospective buyer into or away from an area because of race (*Zuch v. Hussey*, 394 F.Supp. 1028 (E.D.Mich.1975), *aff'd.* 547

**4.** 42 U.S.C. §§ 3601 *et seq.*

**5.** 42 U.S.C. § 3601.

**6.** 42 U.S.C. § 3602(f).

F.2d 1168 (6th Cir. 1977)). Thus, many of the practices which have been prohibited by § 3604(a) have not been directly related to a refusal to sell or rent, but have included a variety of practices which have the effect of denying dwellings on prohibited grounds.

■ The Department of Housing and Urban Development has interpreted the provisions of § 3604(a) of the Fair Housing Act as applicable to insurance redlining.[7] Specifically, HUD has commented on the close nexus among insurance, financing, and the availability of suitable housing:

> Adequate insurance coverage is often a prerequisite to obtaining financing. Insurance redlining, by denying or impeding coverage makes mortgage money unavailable, rendering dwellings 'unavailable' as effectively as the denial of financial · assistance on other grounds . . . .[8]

Such interpretations by HUD of the language of the Fair Housing Act are "entitled to great weight." *Trafficante v. Metropolitan Life Ins.,* 409 U.S. 205, 210, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Gladstone Realtors v. Village of Bellwood,* —— U.S. ——, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). See also *Laufman v. Oakley Bldg. & Loan Co.,* 408 F.Supp. 489, 494 (S.D.Ohio 1976).

The interrelationship between insurance and financing was expatiated upon by the President's National Advisory Panel on Insurance:

> Insurance is essential to revitalize our cities. It is a cornerstone of credit. Without insurance, banks and other financial institutions will not—and cannot make loans.[9]

And the connection between financing and the availability of suitable housing was articulated by the *Laufman* court in the context of mortgage redlining:

The cost of housing being what it is today, a denial of financing assistance in connection with a sale of a home would effectively "make unavailable or deny" a "dwelling." When such denial occurs as a result of racial considerations, § 3604 is transgressed.

*Laufman v. Oakley Bldg. & Loan Co.,* 408 F.Supp. 489, 493 (S.D.Ohio 1976).

■ Thus, the availability of appropriate insurance is a necessary predicate to the availability of financing, and financial assistance is a precondition to securing the availability of adequate housing. Since a discriminatory denial of financing violates § 3604(a), a discriminatory failure or refusal to provide property insurance on dwellings also must violate § 3604(a).

The legislative history supports this interpretation of § 3604(a).[10] In discussions on the Fair Housing Act, legislators emphasized that the Act is designed to curb "racially segregated housing patterns."[11] More specifically, the Act seeks "to eliminate the discriminatory business practices which might prevent a person economically able to do so from purchasing a house regardless of his race."[12] Since insurance is a precondition to adequate housing, a discriminatory denial of insurance would prevent a person economically able to do so from buying a house. Consequently, although insurance redlining is not expressly proscribed by the Act, it is encompassed by both the broad language of § 3604(a) and the legislative design of the Act which seeks to eliminate discrimination within the housing field.

Defendant Midwestern also contends that introduction in Congress of the Edwards-

7. Memorandum of the General Counsel of Housing and Urban Development to Chester McGuire, Assistant Secretary for Equal Opportunity, dated August 15, 1978.

8. *Id* at 2.

9. Report by the President's National Advisory Panel on Insurance, *Meeting the Insurance Crisis of Our Cities* (1968).

10. See generally, Dubofsky, Fair Housing: A Legislative History and a Perspective, 8 Washburn L.J. 149; Schwemm, Discriminatory Effect and the Fair Housing Act, 54 Notre Dame L.J. 199 (1978).

11. E. g., 114 Cong.Rec. 2275, 2278.

12. H.R. 3504, 95 Cong., 1st Sess. § 804 (1977).

Drinan bill,[13] which would have amended the Fair Housing Act by specifically prohibiting insurance redlining, infers that this practice is not forbidden by the Act as presently written. The legislative history, however, indicates that this amendment was introduced by proponents as a clarification of existing law, and not as the creation of a new prohibition. For instance, cosponsor Rep. Don Edwards stated during hearings on the bill:

> [s]ubstantively, H.R. 3504 would clarify and strengthen several areas including mortgage and insurance redlining . . .[14]

The Secretary of HUD also commented that:

> I find the clarifying amendments in H.R. 3504 on insurance and lender redlining practices helpful and necessary. While there are strong indications that such conduct is reached by the existing law, the more explicitly the statute addresses these issues, the more certain we can be that potential violators are fully aware of the conduct prohibited. In addition, victims of such conduct could more easily secure redress in the courts if the law clears away present doubts as to the extent of its coverage.[15]

Thus the bill was intended as a clarification of existing law, and the bill further supports plaintiffs' contention that insurance redlining is proscribed by the Fair Housing Act.

### b. Section 3604(b)

Section 3604(b) makes it unlawful to discriminate in the terms, conditions, or privileges, or in the provisions of services or facilities in connection with the sale or rental of housing. The phrase "or in the provision of services or facilities in connection" with the sale or rental of a dwelling also has been broadly construed. Municipal services such as sewage treatment have been held to be included by this provision.

*United Farmworkers of Florida v. City of Delray Beach*, 493 F.2d 799 (5th Cir. 1974). However, since a violation of § 3604(a) already has been established by the complaint, the Court will not consider the additional problem of whether § 3604(b) reaches discrimination by a third party after the sale has been completed.

### 2. Section 3605

Section 3605 prohibits discrimination in the financing of housing. This section has application to "any bank, building and loan association, insurance company or other corporation, association, firm or enterprise whose business consists in whole or in part in the making of commercial real estate loans." Plaintiffs do not assert that Midwestern is engaged "in the making of commercial real estate loans," but rather that insurance is a precondition to financing and refusal to provide insurance is in effect a denial of financing.

While § 3605 has application to an "insurance company," it is clear that the statute has reference to institutions engaged "in the making of commercial real estate loans." Even a broad construction of this section cannot alter its unambiguous meaning. Thus § 3605 does not contemplate proscription of insurance redlining by an insurance company not engaged "in the making of commercial real estate loans."

### 3. Section 3617

Section 3617 provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this Title. This section may be enforced by appropriate civil action.

---

**13.** Proposed Amendments to the Fair Housing Act: Hearings Before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, House of Representatives, 95 Cong., 2d Sess. (1978).

**14.** *Id.* at 2.

**15.** *Id.* at 31.

It is unclear whether a violation of § 3617 can be established without first establishing a violation of §§ 3604, 3605 or 3606. *Compare Laufman v. Oakley Bldg. & Loan Co.*, 408 F.Supp. 489, 497–98 (S.D.Ohio 1976) *with Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1288 n.5 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). However, this issue need not be addressed at this time since defendant's alleged conduct already is found to be in violation of § 3604, one of the sections enumerated in § 3617. Thus defendant's alleged conduct also violates § 3617.

B. Insurance Underwriting Legislation.

In 1944, the United States Supreme Court reversed its previous ruling and held that the insurance business is engaged in interstate commerce and is subject to federal regulation.[16] The McCarran Act, passed in 1945, enacts the Congressional decision that continued regulation and taxation by the states are in the public interest, but does not preclude federal regulation of the business of insurance[17].

The rioting and civil disturbances of the 1960's which predicated fair housing legislation also culminated in the appointment of the National Advisory Panel on Insurance in Riot-Affected Areas. The Panel found many inner core business persons and residents to be uninsured or underinsured. The Panel Report stated:

> Insurance is essential to revitalize our cities. It is a cornerstone of credit. Without insurance, banks and other financial institutions will not—and cannot—make loans. New housing cannot be constructed and existing housing cannot be repaired. New business cannot be opened and existing businesses cannot expand, or even survive.

One result of the Panel's recommendations was enactment of the Urban Property Insurance Protection and Reinsurance Act of 1968 (UPIPRA). UPIPRA sets forth the operating structure of the state FAIR plan. It does not expressly address the issue of discriminatory insurance redlining based on race. UPIPRA was enacted to protect private insurance companies from the risk of catastrophic losses which resulted from riots or civil disorders.

The State FAIR plans are an outcropping of UPIPRA. The purpose of the Ohio FAIR plan is:

> To assist applicants in urban areas to secure basic property insurance, and to formulate and to administer the program for the equitable apportionment of basic property insurance which cannot be obtained in the normal market.[18]

Plaintiffs and amici have indicated that as a result of the FAIR plans, a pattern by some insurance companies of disposing of their few ghetto area policies when a FAIR plan goes into operation has developed. The result is the creation of two insurance markets: the private insurers serving the "normal" market and the state FAIR plans serving the inner core.[19]

HUD also has commented on this problem:

> [D]enied access to a voluntary market, many decent risks are treated as second-class consumers who must seek insurance protection under the FAIR plan or in the surplus lines market where they pay more for less coverage than their suburban counterparts.[20]

■ Discriminatory denial of access to "normal" insurance and relegation of minorities to state FAIR plans creates the "racially segregated housing patterns"

---

**16.** *United States v. South-Eastern Underwriters Ass'n.*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944).

**17.** McCarran Act, 15 U.S.C. §§ 1011–1015 (1978).

**18.** O.R.C. § 3929.43(A).

**19.** Barker, The High Cost of Property Insurance in HUD Urban Core Housing Development, No. 671, Insurance L. Journal (December 1979), 711.

**20.** Insurance Crisis in Urban America, U.S. Department of Housing of Urban Development, Federal Insurance Administration, 1978, at 43.

which the Fair Housing Act is designed to prevent. Thus, it is clear that the McCarran Act, Urban Property Protection and the state FAIR plans do not, and were not intended to, address the problems of insurance redlining; rather, this issue is the especial province of the Fair Housing Act.

II. *Application of Law to the Present Case.*

■ From the foregoing, two things are immediately evident. First, insurance redlining is violative of the provisions of § 3604(a) and § 3617 of the Fair Housing Act. Secondly, the McCarran Act, the Urban Property Insurance Protection and Reinsurance Act of 1968, and the Ohio FAIR plans were not designed to address the problems of insurance redlining. Instead, the concerns of insurance redlining are within the especial province of the Fair Housing Act. Thus, taking all material allegations in plaintiffs' complaint as true, plaintiffs have stated a claim upon which relief can be granted against Midwestern under the Fair Housing Act.

Accordingly, the motion of defendant Midwestern Indemnity Company for reconsideration of the Court's denial of Midwestern's 12(b)(6) motion is hereby DENIED.

It is so ORDERED.