John McDIARMID, et al., Plaintiffs,

v.

ECONOMY FIRE & CASUALTY COMPANY, et al., Defendants.

No. C–3–81–010.

United States District Court, S.D. Ohio, W.D.

Aug. 1, 1984.

R.J. Stidham, Dayton, Ohio, for plaintiffs McDiarmid and Wingfield.

Noel Vaughn, Dayton, Ohio, for plaintiff Wingfield.

Allen Brown, Cincinnati, Ohio, for plaintiff Carolyn Scott.

Stephen Olden, Cincinnati, Ohio, for plaintiffs Vivian Maxwell and Community Land Co-op. of Cincinnati.

Neil F. Freund, Dayton, Ohio, for defendant Economy Fire & Cas.

Ronald E. Schultz, Dayton, Ohio, for defendant Southwest Ohio Ins. Agency.

Gregory C. Gibson, Dayton, Ohio, for defendant Rose & Associates.

Gregory P. Dunsky, Dayton, Ohio, for defendant Hal Pennington Agency.

## DECISION AND ENTRY OVERRULING DEFENDANTS' MOTIONS TO DISMISS

RICE, District Judge.

This cause is before the Court on the Motions to Dismiss of Defendants Economy Fire & Casualty Company (doc. # 58) and Defendants Rose & Associates, Inc. and Southwest Ohio Insurance Agency (doc. # 60). In this action, Plaintiffs allege that the Defendants have engaged in a pattern of "insurance redlining" and, therefore, have denied them home owners insurance, based on their race, all in violation of Title VIII of the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.*

In their motions, Defendants argue that to deny a person insurance coverage, even because of that person's race, does not violate Title VIII. Alternatively, Defendants contend that the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, forbids this Court from considering the Plaintiffs' Title VIII claims.

With their motions, Defendants seek to have this Court re-examine decisions entered in *Dunn v. Midwestern Indemnity Company*, 472 F.Supp. 1106 (S.D.Ohio 1979) and *Pierce v. Metropolitan Property and Liability Insurance Company*, No. C–3–82–044 (S.D.Ohio Nov. 25, 1983). In *Dunn*, Judge Rubin concluded that insurance redlining was outlawed by § 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a). Section 804(a), relied on by Judge Rubin, provides in part that it shall be unlawful to

"otherwise make unavailable or deny, a dwelling to any person because of race...." This Court has followed *Dunn,* most recently in its decision in *Pierce v. Metropolitan Property and Liability Insurance Co., supra.* Defendants seek a reappraisal of *Dunn* and *Pierce,* in light of the Fourth Circuit's decision in *Mackey v. Nationwide Insurance Companies,* 724 F.2d 419 (4th Cir.1984). In *Mackey,* the court rejected Judge Rubin's interpretation of § 804(a) and held that Title VIII does not apply to the sale of insurance.

■ The Court has reconsidered *Dunn* and *Pierce* in the reflected light of *Mackey.* Nonetheless, for reasons that follow, the Court will not stray from the path followed by the *Dunn* and *Pierce* decisions.

First, courts in the Sixth Circuit have painted with a broad brush when sketching the parameters of Title VIII. In *Zuch v. Hussey,* 366 F.Supp. 553 (E.D.Mich.1973) *aff'd* 547 F.2d 1168 (6th Cir.1977), Judge Keith (now an Appellate Judge, but then on the District Court Bench) said that Congress intended Title VIII to have a broad scope and broad objectives, "to prohibit not only direct discrimination but also all practices which have a racially discouraging effect." 366 F.Supp. at 557. In *Laufman v. Oakley Bldg. & Loan Co.,* 408 F.Supp. 489 (S.D.Ohio 1976), Judge Porter interpreted § 804(a) as making mortgage redlining unlawful. In *United States v. City of Parma,* 494 F.Supp. 1049 (N.D.Ohio 1980), *aff'd in part rev'd in part,* 661 F.2d 562 (6th Cir.1981), *cert. den.* 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441 (1982), Judge Battisti held that § 804(a) prohibits municipal land use practices which make housing unavailable on the basis of race. Additionally, courts in other circuits have taken a similar broad view of Title VIII and § 804(a). For instance, in *United States v. American Institute of Real Estate Appraisers,* 442 F.Supp. 1072 (N.D.Ill.1977), the court held that § 804(a) prohibits the use of race as a negative factor in making appraisals. The court said:

> The promulgation of standards which cause appraisers and lenders to treat

race and national origin as a negative factor in determining the value of dwellings and in evaluating the soundness of home loans may effectively "make unavailable or deny" a "dwelling" and may "interfere" with persons in the exercise and enjoyment of rights guaranteed by the Act. When such denial or interference occurs as a result of considerations relating to race or national original, sections 804(a) and 817 are transgressed.

442 F.Supp. at 1079 (footnote omitted).

Second, the result in *Dunn* is the logical extension of *Laufman v. Oakley Bldg. & Loan Co., supra,* and *United States v. American Institute of Real Estate Appraisers, supra.* In each of those cases, a court held that § 804(a) is violated when a service such as financing or appraisals, is denied on the basis of race because such a denial effectively makes unavailable or denies a dwelling to a person. Similarly, the availability of housing is likewise dependent on the availability of insurance. It is elementary that without insurance, mortgage financing will be unavailable, because a mortgage lender simply will not lend money on the property. Without mortgage financing, homes cannot be purchased. Thus, the availability of insurance and the ability to purchase a home go hand in hand and vary, in direct proportion, to one another.

■ Third, this Court, like Judge Rubin in *Dunn,* will defer to the opinion of the Department of Housing and Urban Development, the governmental agency responsible for both drafting the regulation and enforcing the law in question, which was to the effect that § 804(a) was applicable to insurance redlining. *See* 472 F.Supp. at 1109.

■ Fourth, the Court notes that the *Mackey* court relied, in part, on repeated efforts by Congress to amend Title VIII to expressly extend its coverage to discrimination in the provision of insurance on dwellings. *See* 724 F.2d at 424. These amendments have been defeated. *Id.* This Court is not willing to rely on the subsequent,

after the fact, actions of Congress as a means to divine the legislative intent in Title VIII as of the time of its enactment. Relying on this type of after the fact legislative history is speculative at best, because the Court has no way of knowing why the proposed amendments were rejected. The amendments may have been rejected because Congress did not think the insurance industry should be regulated by Title VIII. However, it is equally likely that Congress perceived the amendments to be unnecessary because insurance or insurance redlining was already within the coverage of Title VIII.

Alternatively, Defendants argue that the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, precludes Plaintiffs' Title VIII claim. Relevant portions of the McCarran-Ferguson Act provide: "No Act of Congress shall be construed to invalidate, impair or. supersede any law enacted by any state for the purpose of regulating the business of insurance.…" 15 U.S.C. § 1012(b). Specifically, Defendants argue that interpreting Title VIII in the manner proposed by Plaintiffs, and adopted in *Dunn*, would "invalidate, impair or supersede" Ohio's comprehensive regulation concerning insurance redlining, found in Ohio Rev.Code §§ 3901.21 and 3901.22. This Court does not agree.

■ Congress enacted the McCarran-Ferguson Act in response to the Supreme Court's decision in *United States v. Southeastern Underwriters Association*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). In *Southeastern Underwriters Association*, the court overruled *Paul v. Virginia*, 8 Wall. 168, 19 L.Ed. 357 (1868) and its progeny, and held that an insurance company conducting a substantial portion of its business across state lines was engaged in interstate commerce and thus subject to congressional regulation, including the Sherman Act, under the commerce clause. *See e.g., Ohio AFL–CIO v. Insurance Rating Board*, 451 F.2d 1178, 1181 (6th Cir.1971). Thus, the primary purpose of the McCarran-Ferguson Act was to ensure to the states the continued ability to regulate and to tax the business of insurance. *Group Life & Health Insurance Co. v. Royal Drug Co., Inc.*, 440 U.S. 205, 217–218, 99 S.Ct. 1067, 1076–1077, 59 L.Ed.2d 261 (1979). A secondary purpose was to grant certain exemptions from antitrust laws to the business of insurance. *Id.* at 218, 99 S.Ct. at 1076. *See also, Mackey, supra*, 724 F.2d at 420.[1]

In a number of other contexts, courts have examined the congressional purpose of the McCarran-Ferguson Act and have concluded that the Act does not prevent the application of various federal civil rights statutes to the business of insurance. *See e.g., EEOC v. Wooster Brush Co.*, 523 F.Supp. 1256 (N.D.Ohio 1981), *aff'd in part rev'd in part*, 727 F.2d 566 (6th Cir.1984) (McCarran-Ferguson Act inapplicable to Title VII); *Women in City Government United v. City of New York*, 515 F.Supp. 295 (S.D.N.Y.1981) (same); *Ben v. General Motors Acceptance Corp.*, 374 F.Supp. 1199 (D.Colo.1974) (McCarran-Ferguson Act does not bar claims under 42 U.S.C. §§ 1982 and 1985).

Herein, the Defendants contend that interpreting Title VIII to allow Plaintiffs to maintain their claims would invalidate, impair or supersede Ohio's comprehensive regulation of insurance redlining. The Court does not agree. First, it is not all that clear that the statutes relied on by Defendants do in fact regulate insurance redlining. Second, assuming *arguendo* that the statutes upon which Defendants rely regulate insurance redlining, allowing Plaintiffs' Title VIII claims to proceed

---

**1.** In *Mackey*, the court concluded that the McCarran-Ferguson Act was not an impediment to Title VIII claims. In *Mackey*, the defendant argued that N.C.Gen.Stat. § 58–131.37, a state statute which prohibits the adoption of discriminatory rates, would be invalidated, impaired or superseded if Title VIII was interpreted to prohibit insurance redlining. 724 F.2d at 421 and n. 1. However, unlike Ohio Rev.Code § 3901.-21, N.C.Gen.Stat. § 58–131.37 does not prohibit discriminatory practices in providing insurance coverage. Therefore, *Mackey* is inapposite on this issue.

would not invalidate, impair or supersede the state statutes.

 For their argument that Ohio comprehensively regulates insurance redlining, Defendants rely on Ohio Rev.Code § 3901.21(L) and (M),[2] which provides:

The following are hereby defined as unfair and deceptive acts or practices in the business of insurance:

\* \* \* \* \* \*

(L) Refusing to issue any policy of insurance, or canceling or declining to renew such policy because of the sex or marital status of the applicant, prospective insured, insured, or policyholder.

(M) Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of insurance, other than life insurance, or in the benefits payable thereunder, or in underwriting standards and practices or eligibility requirements, or in any of the terms or conditions of such contract, or in any other manner whatever.

Subsections L and M were added to § 3901.21 by Amended Substitute Senate Bill 425 ("Senate Bill 425"), 136 Ohio Laws 891 (1976). If subsection M was the explicit regulation of insurance redlining that Defendants contend it is, then subsection L, which prevents insurance companies from refusing to issue a policy, canceling a policy or declining to renew a policy on the basis of sex or marital status, is surplusage. The Ohio General Assembly felt it necessary to add subsection L, explicitly prohibiting redlining on the basis of sex. Accordingly, this Court cannot conclude that Ohio General Assembly intended to prohibit all insurance redlining with the general language of subsection M. In other words, this Court concludes that the general language of subsection M does not address the question of insurance redlin-

ing. Additionally, an examination of Senate Bill 425 convinces this Court that the Ohio General Assembly did not intend § 3901.21(M) to comprehensively regulate insurance redlining. Rather, the major focus of Senate Bill 425 was the elimination of sex discrimination in the business of insurance. *See* Eisenman, Gall and Hatfield, *Toward Equality for Ohio Men and Women: The ERA and Legislative Response,* 37 Ohio St.L.J. 537, 557 (1976). For instance, §§ 3911.10, 3911.11 and 3911.12 were amended so that their content became sexually neutral. Also, in addition to adding subsections L and M to § 3901.21, Senate Bill 425 added subsection N, which prevents insurance companies from denying disability income insurance solely because the applicant's occupation is that of managing a household, and subsection O, which related to maternity benefits.[3]

Even assuming, *arguendo,* that § 3901.21 regulates insurance redlining, allowing Plaintiffs' Title VIII claim to proceed will not invalidate, impair or supersede § 3901.21, since Title VIII does not permit anything that § 3901.21 prohibits and Title VIII does not prohibit anything that § 3901.21 permits. Courts have traditionally resolved the question of whether a statute of one jurisdiction conflicts with that of another jurisdiction in such a manner. *See e.g. Village of Struthers v. Sokol,* 108 Ohio St. 263, 140 N.E. 519 (1923).

Based on the foregoing, Defendants' Motions to Dismiss are overruled.

---

2. *Ohio Rev.Code § 3901.22 provides an enforcement mechanism for § 3901.21.*

3. The Court also notes that none of the regulations adopted by the Superintendent of Insurance to enforce § 3901.21 relate to insurance redlining. *See* Ohio Admin.Code § 3901–1–07.